The next case on the docket is number 519-066, People v. Smith. Arguing for the appellant, Carl Smith Jr., is Adrienne Sloan. Arguing for the appellate, People of the State of Illinois, is Max Miller. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Okay, Ms. Sloan, are you ready to proceed? Yes, ma'am. You may proceed. Okay, again, good morning, your honors, and may it please the court. My name again is Adrienne Sloan. I'm here with the Office of the State Appellate Defender on behalf of Carl Smith Jr. I'd like to first address issue 2 in my brief, which is the best evidence rule violation. At the commencement of the investigation of this offense, there existed surveillance footage, which could have offered solid proof or lack thereof as to whether Smith committed residential burglary. But due to police negligence, this footage was not recovered and was not presented to the jury. Instead, the state offered two incomplete 20-second iPhone clips, which admitted pivotal details of the day of the alleged offense. These clips violated the best evidence rule and were highly prejudicial. Thus, they should not have been admitted, and the error requires remand. There are a few steps to the best evidence rule. First, the rule provides that an original or a duplicate of the original be provided whenever possible. Second, if not an original or a duplicate, the state must show that the original was lost, destroyed, or unavailable. And then if it's unavailable, there's four other requirements that the state must show in order to admit a substitute, which includes the proponent's diligence in attempting to procure the original and the authenticity of the substitute. First of all, these clips were not the original surveillance tape. Again, they're two non-consecutive 20-second clips that the landlord, Mr. Smith's wife, recorded by holding her phone up to the screen of the surveillance equipment. These clips do not show Mr. Smith entering the residence he was alleged to have burglarized. They are also not a duplicate because under the rule, a duplicate is defined as something that accurately reproduces the original. Accurate, in this case, would have been a consecutive recording of all of the events that transpired that the state sought to prove and that the full video could have shown and proven. Next, to admit something that's not an original and not a duplicate, the state must show that the original is lost, destroyed, or unavailable. This video was not originally unavailable. It was actually available for 48 hours after it was recorded, and investigating officer McCrary testified that he knew of the existence of surveillance footage from the commencement of his investigation, which was the same day that the crime was committed. And even assuming that the clips were unavailable or that it was sufficient under the rule that they became unavailable two days after the officer found out about them, the state can't prove the other requirements that the rule provides for a substitute to be admitted over the best evidence. First of all, again, authenticity of the substitute. The substitute here is not authentic. It's two non-consecutive clips, and it doesn't provide the same information that the full video would have. Ms. Tom, let me ask you a question. The best evidence rule that you're discussing, are we really talking here about the best evidence rule, or are we talking about the selectivity of the clips themselves, the fact that there were two different clips out of a lengthy footage? Because under best evidence, if the 20-second clip is authentic, and it is what it portrays to be, then it could be the best evidence. But I'm wondering if you're really off... I mean, is your argument best evidence and a lack of selectivity that prejudiced the defendant somehow? I'm a little confused on which rule we're trying to apply here. So our argument is that these clips violated the best evidence rule, and because of the violation, they should not have been admitted. And this rule provides that if you're... the best evidence, and it's undisputed, the state does not dispute that the best evidence in this case would have been the actual surveillance tape. So our position is that it would have been the consecutive tape that the officer, again, could have and had no reason not to record when he began investigating this case. Because the state didn't prove this, it has to follow the other requirements of the best evidence rule in order to admit something that's a substitute for what would be the best evidence. So again, the state can't prove that the two other requirements of the best evidence rule were met, which is the authenticity of the substitute, and most importantly, the proponent's diligence in attempting to procure the original. And again, this rule states that these four factors must be proven for non-best evidence to be admitted. The proponent here was not diligent in attempting to procure the substitute. It's not diligent for an officer to rely upon a lay person, the landlord, to obtain the video, when he could have and should have obtained it himself. He could have, at the very least, checked on Schmidt during the two days that the video was available. These clips can't... What about the fact that he, the landlord, selected what should or should not be seen? Well, of course. So the landlord, we shouldn't have to rely on the landlord's assurances here that nothing happened at other parts in the video. What we should have had is an officer performing a correct investigation, which would have involved watching the video and obtaining the footage. It's also really important to note that although the landlord did state that nothing of interest happened in the gaps between the clips, the record positively rebutts this. Mr. Whittington testified, Mr. Whittington being the victim, and the officer corroborated that when he returned home at 6.30 p.m., he saw that his door had been newly tampered with. So if it wasn't tampered with when he left at 12.30, then it had to have happened between 12.30 and his return home. A full video, the best evidence would have shown this, or it would have shown that despite what Mr. Schmidt said, something did happen in the gaps between the video. So you're arguing the best evidence rule to say that the entire video should have been made available, not just the two clips? Yes, the entire video should have been made available, and because the entire video was destroyed, the clips were not admissible. It seems almost like more of a completeness argument than a best evidence, because you're not challenging the authenticity of the snippets that were taken. You're not saying those were tampered with or altered in some fashion. You're just saying we should have been allowed to have the complete video put in. We're arguing that the complete video should have been put in, and that if you're going to make the assumption that the clips are a substitute under the rule, it's not an authentic substitute because what a substitute purports to show would be everything that the full video would have shown. Here, we don't have that because we don't know what happened between the gaps in the clip. All we have is the landlord's testimony about this, and under the rule, it's not admissible. A substitute is not admissible if the state cannot prove that the proponent was diligent in attempting to procure the substitute. The proponent wasn't diligent here. He had two days that he could have recorded the video footage, and he just chose not to do so. Didn't the 5th District in the Bowman case kind of relax that, though, and say that the duplicate would be admissible unless there's a challenge to the authenticity? Here, you're not saying it was tampered with. You're just saying it's not enough. Well, it's not our position that there has to be affirmative evidence that it was tampered with. It just has to be authentic. It just has to prove what it purports to prove. The state used the clips here to argue that Smith entered unauthorizedly at another time. The clips don't show this, and the full video would have shown if he did do this. The reason that we have the best evidence rule is so that we don't have to rely on what Mr. Schmidt or his wife or anyone else said about what happened in the clips of the video. The rules of evidence exist so that competent, reliable, and complete evidence is admitted. These clips not only violated the best evidence rule, but the principles of the rules of evidence generally, and their omission resulted in Smith receiving an unfair trial. I'd next like to address sufficiency. To prove residential burglary, the state needed to demonstrate that Smith entered the apartment without authority and that at the time of entry, he had the intent to commit a theft. On the day of this offense, Smith had permission to be in the apartment, and also the state had no evidence that anything was taken from the home. The state's evidence, even with the admitted video clips, did not prove unauthorized entry or intent to commit a theft, let alone that the unauthorized entry and sloppiness intent occurred concurrently. Thus, Smith's conviction should be reversed outright. First, again, Smith entered Whittington's apartment on the day in question with permission with the intent to clean it. Your time has expired, unfortunately. Okay, well, um, I would just like to ask quickly in summary that Mr. Smith's conviction be reversed outright for the state's failure to prove the burglary elements beyond a reasonable doubt, or that the case be remanded, or that Smith's sentence be reduced by six months to the statutory minimum. Thank you. Okay, thank you. Mr. Miller. Thank you, Your Honor. May it please the court, counsel. My name is Max Miller, and I represent the people of the state of Illinois. The defendant was charged with one count of residential burglary, in that he knowingly and without authority entered the dwelling of Michael Whittington in Carbondale, Illinois with the intent therein to commit a theft. The defendant raises four issues on appeal, but only three of them are relevant after the briefing, whether the state proved it beyond a reasonable doubt, whether the trial court abused its discretion by admitting the two non-consecutive iPhone clips, and whether the defendant's sentence was excessive. I think before addressing the beyond a reasonable doubt argument, it makes sense most to start with the iPhone clips, because that's a necessary part of the state's argument for the evidence. Regarding the admission of the two... Mr. Miller, I want to ask you the same question I asked Ms. Sloan. You only have two video clips, 20 seconds, that are selected by someone who did not view the scene, had no real knowledge. What gives the right of this landlord to pick those sections of the video which should or should not be admitted? And, Your Honor, I would say that that question is sort of outside of the scope of the state's prerogative here. What happened is the landlord came forward with these two clips, and when the state was presented with them, the only question became whether or not we can find a way to use them, because the state didn't have a hand in the creation of them. But I agree that there's a disagreement on what analysis here, whether the best evidence or not, as Justice Vaughn hinted at. The state argued below that looking at our Supreme Court's decision in People v. Taylor, which revolves around a VHS tape that was made by copying data stored on a hard drive in a DVR system. And essentially, the state argues the same circumstances occurred here, where we have video surveillance footage that's unaltered. It's just not entirely recorded. Now, our Supreme Court in People v. Taylor has recognized several appropriate factors in determining whether a proper foundation has been laid for the admission of that kind of surveillance tape. And the state maintains this is what is at issue here, whether or not the state laid a proper foundation for these two clips which it was presented with, which it did not have a hand in creating, because as the defendant has pointed out, before the victim in this case decided to pursue charges or even informed that this information had been deleted. Now, People v. Taylor talks about six factors. They called a non-exhaustive list. They emphasize very heavily that this is sort of a case-by-case analysis. They talk about the device's capability for recording, general reliability, competency of the operator, proper operation of the device, showing the manner in which the recording was preserved or chain of custody, identification of the person's locale or objects depicted, and explanation of any copying or duplication process. And the state would point out that… Mr. Miller, let me just interrupt you. I'm not talking about the foundation of an iPhone. I'm talking about the selectivity, the prejudice that occurs when somebody selects out of however long that video was, two 20-second clips and says there's nothing else on the video that would be relevant. It doesn't even say that. Nothing occurred. Isn't relevancy and prejudice on the selectivity, or as Justice Vaughn said, the lack of completeness, isn't that in and of itself something that we should be concerned about? I'm not debating whether an iPhone can capture an image. Yes, Your Honor. If I understand the question correctly… I mean, would you want to see, if you were involved in a matter, would you want, and you knew a whole video was taken, would you want somebody to select two 20-second images? Sure. And what the state was arguing in why they should be admitted, obviously, is, again, it did not prepare this, but just that we have testimony from hearing from the person who did the taping, a disinterested party, that nothing occurred in that time. And we believe that, you know, as the trial court allowed, they said, you know, we're going to allow vigorous cross-examination on this. This evidence is admissible, but it might not have great weight because the defendant was well within its rights and did argue, hey, what about all this missing time? What about this missing time? That was, you know, before the jury is something to consider. But in the hearing on whether or not this evidence should be admitted, the filmer of the evidence, an attorney who was also the landlord, he, you know, attested that nothing occurred except what I, you know, in the relevant time period, except what I showed. And certainly the jury was free to doubt that and say, well, you know, we don't believe that, that this is a selective… Typically, yes, but often redactions are made when the state is in control of the entire thing to edit out things such as dead air time. And so if we operate under the assumption that the testimony is true, which I believe at this point… But in those cases where the state is editing the defendants there and agrees and sees what's being edited out here, that was done outside the defendant's presence. Some third party made their own editorial decision to cut a big section out. The defendant had no chance to see what was on there, too. That's a little different than saying the state can edit out dead air because the defendant sees it, too. In this case, that didn't happen. Absolutely, Justice Vaughn, but I would say the state also did not have the opportunity to have a say in this editing process. The state was presented with these two clips, you know, from a third party. You know, if they had been involved in the situation of documenting, you know, they might not have elected to use a phone to record this recording or, you know, there's other ways that they might have tried to do it because the landlord confesses to his ability. That was his only manner of actually submitting that to the state. And so I just it's in this case, the defendant wasn't really denied an opportunity that the state had advantage of. Neither side had an opportunity to really decide what clips were going to be preserved. But we have testimony from the person who created the clips that said, I gave you everything that showed someone in that hallway or any kind of movement in that hallway. And so then the argument became, well, can our can we get these admin evidence in the trial court, believe that they were at least worth presenting before the jury and then for the defendant to have the right to cross examine and criticize this evidence is, you know, unreliable because of its incompleteness, et cetera. It appears just inference that the jury placed a lot of weight on these clips. They wanted to see them during their deliberations because that's one of the points raised. So and nobody's accusing the state of any wrongdoing here. It just is what it is. Right. But it seems by inference that the jury did place a lot of weight on these clips. And you have only the testimony of the landlord without any involvement of the state or the defendant or the court as to what is or was not what is or was not relevant. Right. Yes, Your Honor. And I believe that's why people versus Taylor is so relevant and why the real issue here is whether a proper foundation was laid for these clips because the analysis and Taylor, you know, specifically deals with essentially a recording of a recording or when you deal with digital information that's stored on different areas. And I think that through those factors, they talked about the reliability and you have the ability to consider whether you think that this was handled in such a way that was, you know, competently done and at least that it could have been presented to the jury. And whether, you know, the cross examination was sufficient in highlighting for the jury that they could they cast doubt on such thing. If there are no further questions, I, I don't believe we have time to go into the reasonable doubt argument. So I would just rely on the brief and respectfully request this court from. Thank you so much, Mr. Miller. Yes, ma'am. First of all, I would just like to point out that, as I noted in my briefs, Taylor is distinguishable from our case, not only the fact that Taylor is about foundational requirements in our case is not, but the facts of that case are stronger than ours In Taylor, the video that was admitted showed the entire offense being committed. And there was also a legitimate reason for the lapse in the videotape. The lapse in Taylor was explained by the fact that that was how the recording device worked. When no one was in the video, the device stopped recording. So actually, in Taylor, the fact that there was a gap even further supported the state's argument. Here, these clips were highly prejudicial. The landlord selected them, gave his assurances, of course, that nothing happened in the clips. But again, I really want to emphasize that those assurances were positively rebutted by the record. The landlord said nothing else happened, but Mr. Whittington and the officer testified that the door was newly tampered with. So the landlord here had to have missed something. He had to have missed something happening to the door from the time that Mr. Whittington left and from the time he returned. Also, I would just like to point out, it doesn't matter that the state didn't prepare the video clips. What's required under the best evidence rule is that for the state to admit evidence, it has to prove the proponent's diligence in attempting to prepare the original. Again, Officer McCreary is not diligent here. And to address the state's argument that often the state before trial can edit out lapses in a video, of course, this does happen. But ordinarily, defense counsel would have gotten the entire video in discovery, been able to look it over, and at that point, they could have stipulated that there were actually gaps in the tape. Here, we don't believe that nothing happened in the gaps in the tape. The testimony doesn't tell us that nothing happened in the tape. Something had to have happened. Again, I would just state that the erroneous omission of the clips here was extremely prejudicial to Smith and requires that the case be remanded. What do you mean when you're saying something had to have happened? What do you mean something had to have happened? Well, the landlord testified that he didn't see anything happen in the video clips. But Mr. Whittington testified that he left his apartment at 1230 and when he returned home, he saw that there was damage to his door that hadn't been there before. So that means that someone, in some way, had to have damaged the door. But he also said his window was damaged, the screen was damaged, so something could have happened there if the person entered through the screen. You've got a whole lot of conflicting stuff. The jury was in the position to hear all that. Well, the actual Whittington's testimony as to the damage to the door, the officer investigating did corroborate this. And the point is, if he left, and he was not found incredible, and if he left and there's no damage to the door, he came back and there was damage to the door, then we can't take the landlord's statement that nothing happened as true because something, in some way, had to have happened that damaged the door. This is the problem with this evidence. We need the best evidence and we have the best evidence rule so that we don't have to speculate based on what the landlord says, based on what might have happened in the gaps. We could have had the complete video here. The officer had the ability to record it, he had time to record it. He decided not to do so and for that reason, the clips violated the best evidence rule and should not have been admitted to the jury. If there are no other questions, I would just again ask that the case be remanded or reversed outright for the state's inability to prove the burglary elements beyond a reasonable doubt, or the Mr. Smith's sentence be reduced. I have a question. Maybe it's my forgiveness about the record, but the landlord testified. I thought he and his wife prepared the snippets. He held up his wife's iPhone to the thing, or his wife was there, the two of them together prepared it. Did the wife testify? The wife did not testify at trial. So only the landlord testified about the preparation of the snippets. Yes. Thank you. Justice Warden? Nothing. All right, Justice Vaughn, anything else? No, thank you. Okay, thank you both for your arguments today. This matter will be taken under advisement and we will issue a disposition in due course. Thank you, Your Honor. Thank you. Have a good day.